1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ANTHONY MEYER, an Individual,
SMITH & NEPHEW, INC., a
Delaware Corporation,

                    Plaintiff,

v.

HOWMEDICA OSTEONICS CORP.,
a New Jersey Corporation; and DOES
1-10, Inclusive,

                    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.14CV2496 AJB (NLS)

ORDER GRANTING
DEFENDANT'S MOTION TO
TRANSFER AND DENYING
PLAINTIFFS' MOTION TO
REMAND

(Doc. Nos. 5, 14)

      Before the Court is a motion to dismiss pursuant to 28 U.S.C. § 1404(a) and Rule
12(b)(6) or, in the alternative, to transfer the action, filed by Defendant Howmedica
Osteonics Corporation ("Defendant" or "Howmedica") (Doc. No. 5), and a motion to
remand, filed by Plaintiffs Anthony Meyer ("Meyer") and Smith & Nephew, Inc. ("Smith")
(jointly referred to as "Plaintiffs") (Doc. No. 14).  Upon consideration of the motions and
the parties' arguments in support and opposition, the Court DENIES Plaintiffs' motion to
remand, GRANTS Defendant's motion to transfer and DEFERS Defendant's Rule 12(b)(6)
motion to dismiss.

## I.    BACKGROUND

### A.    Factual Background[1]

Defendant provides and sells medical products to hospitals and doctors.  (Compl. 4, Doc. No. 1-1.)  Meyer worked for Defendant as a Trauma Representative from September 2012 to August 4, 2014.  (*Id.*)  Meyer began working for Smith on or about September 8, 2014, and presently works for Smith.  (*Id.* at 5.)

On or about September 28, 2012, Meyer signed an Employment Agreement with Defendant (Defendant is referred to in the Employment Agreement as "Stryker Orthopaedics").  (*Id.* at 4; *see also* Compl. Ex. 1 ("Employment Agreement").)  Paragraph 2(e)(vi) of the Employment Agreement states, in part:

> [F]or a period of one year following the Employment Termination Date, in order to protect the confidential information and trade secrets of Stryker Orthopaedics, Employee shall not, directly or indirectly, engage in any of the following conduct: (x) solicit or attempt to solicit, on Employee's own behalf or on behalf of any person or entity other than Stryker Orthopaedics, business from customers that Employee contacted or serviced while in the employ of Stryker Orthopaedics in any product lines marketed or sold by Employee for Stryker Orthopaedics; (y) attempt to employ, or solicit for employment by others, any Stryker Orthopaedics employee; or (z) induce or attempt to induce any of Stryker Orthopaedics' then current consultants, independent contractors or licensees, or any other third party, to alter or terminate any relationship with Stryker Orthopaedics.

(Employment Agreement 6.)

Paragraph 6(h) of the Employment Agreement states, in its entirety:

> Jurisdiction.  Stryker Orthopaedics and Employee consent and agree that any and all litigation between them relating to this Agreement shall take place in the State of New Jersey, and each of them expressly consents to the jurisdiction of the federal and/or state courts in New Jersey (the "Court").

(*Id.* at 11.)

Paragraph 6(i) of the Employment Agreement states, in its entirety:

> Governing Law.  This Agreement shall be construed in accordance with and governed for all purposes by the laws of the State of New Jersey, without regard to its conflicts of laws principles.

---

[1]    The facts herein are derived from the Complaint.  (Doc. No. 1-1, attached to Defendant's Notice of Removal (Doc. No. 1) as Exhibit A.)

1   (*Id.*)

2       Plaintiffs bring three causes of action relating to the Employment Agreement.
3   Plaintiffs' first cause of action seeks declaratory relief in anticipation that Defendant will
4   seek to enforce Paragraph 2(e)(vi) of the Employment Agreement. (Compl. 5-6.) Plaintiffs
5   argue Paragraph 2(e)(vi) of the Employment Agreement violates California Business &
6   Professions Code section 16600[2] and constitutes unlawful business practice pursuant to
7   section 17200.  (*Id.*)  Section 16600 provides "[e]very contract by which anyone is
8   restrained from engaging in any lawful profession, trade or business of any kind is to that
9   extent void." (*Id.* at 6.) Section 17200 addresses unfair business competition including any
10  unlawful, unfair, or fraudulent business act or practice.

11      Plaintiffs allege that enforcing, threatening to enforce, and attempting to enforce
12  Paragraph 2(e)(vi) will deprive Meyer of his fundamental right, as a California resident, to
13  work within his lawful trade, business, or profession and to move freely within the
14  marketplace. (*Id.* at 5.)  As such, Plaintiffs request judicial determination that Paragraph
15  2(e)(vi) is unlawful and void under section 16600, and cannot be enforced against Meyer.
16  (*Id.* at 6, 9.)

17      Plaintiffs allege that enforcing, threatening to enforce, and attempting to enforce
18  Paragraph 2(e)(vi) will deprive Smith of its right to employ individuals of its choice to
19  perform services on its behalf and prevents Smith from using Meyer's services, which
20  violates section 16600 and constitutes unlawful business practice under to section 17200.
21  (*Id.* at 5.)  As such, Plaintiffs request judicial determination that Meyer has the right to work
22  for Smith and engage in the profession, trade, or business of his choosing in California. (*Id.*
23  at 9.)

24      Plaintiffs' second cause of action seeks declaratory relief as to Paragraphs 6(h) and
25  6(i). (*Id.* at 2.)  Plaintiffs argue these paragraphs are void and unenforceable by the presence
26  of Paragraph 2(e)(vi), because enforcing the jurisdiction and governing law provisions will

27

28          [2] Unless otherwise indicated, all statutory sections refer to California Business &
    Professions Code.

14cv2496

1  result in disregard of section 16600. (*Id.* at 7.) Plaintiffs also argue Paragraphs 6(h) and 6(i)

2  are independently in violation of sections 16600 and 17200. (*Id.* at 2.) Lastly, Plaintiffs

3  argue these paragraphs are void and unenforceable because the provisions are adhesive in

4  nature and a result of undue influence and overwhelming bargaining power of Defendant.

5  (*Id.* at 7.) As such, Plaintiffs request judicial determination that Paragraphs 6(h) and 6(i) are

6  void and unenforceable against Plaintiffs. (*Id.* at 7, 9.)

7      Plaintiffs' third cause of action alleges violation of state unfair competition laws. (*Id.*

8  at 8.) Plaintiffs argue Defendant's use of, and threats or attempts to enforce Paragraphs

9  2(e)(vi), 6(h), and 6(i) constitute unfair and unlawful business practice in violation of

10  sections 16600 and 17200. (*Id.* at 8.) Plaintiffs allege Defendant has profited, is profiting,

11  and will continue to profit from its unlawful and unfair business practices. (*Id.*) As such,

12  Plaintiffs seek an award in the amount of the ill-gotten gains by Defendant, pursuant to

13  section 17203. (*Id.*) Plaintiffs also allege Plaintiffs have lost money and property as a result

14  of Defendant's conduct. (*Id.*) As such, Plaintiffs request restitution in an unspecified

15  amount. (*Id.* at 8-9.) Lastly, Plaintiffs request a preliminary and permanent injunction

16  prohibiting the use of Paragraph 2(e)(vi). (*Id.*)

17      **B.   Procedural Background**

18      Plaintiffs filed the Complaint in the Superior Court of the State of California for the

19  County of San Diego on September 9, 2014. (*See* Compl.) Defendant removed the action

20  on October 20, 2014. (*See* Not. of Removal, Doc. No. 1.) Plaintiffs now move to remand

21  for lack of subject matter jurisdiction and argue that this Court should abstain from hearing

22  the case because the State of California has a strong policy interest in the issues involved.

23  (Mot. to Remand, Doc. No. 14; Mem. Supp. Remand 7, 9, Doc. No. 14-1.) Defendant

24  responded (Mem. Opp. Remand, Doc. No. 19) and Plaintiffs replied (Reply Supp. Remand,

25  Doc. No. 20).

26      In addition to Plaintiffs' motion, Defendant moves to dismiss pursuant to 28 U.S.C.

27  §1404(a) and Rule 12(b)(6) or, in the alternative, to transfer the action. (Mot. to Dismiss,

28  Doc. No. 5; Mem. Supp. Dismiss, Doc. No. 5-1.) Plaintiffs responded to Defendant's

14cv2496

1 motion to dismiss (Mem. Opp. Dismiss, Doc. No. 17) and Defendant replied (Reply Supp.

2 Dismiss, Doc. No. 18).

3 **II.    DISCUSSION**

4     In the interest of economy, the Court will consider the motion to remand, then contin-

5 ue to the motion to dismiss.

6     **A.    Motion to Remand**

7     Defendant removed the case to this Court under 28 U.S.C. § 1441(a), asserting

8 diversity jurisdiction under 28 U.S.C. § 1332(a).  (Not. of Removal 2-3.)  Plaintiffs move

9 to remand the case to state court, arguing that the amount in controversy is not more than

10 $75,000, as required for diversity jurisdiction.  (Mem. Supp. Remand 7.)  Defendant asserts

11 (Not. of Removal 3), and Plaintiffs do not dispute, there is complete diversity between the

12 parties in this case.  The only question is whether the amount in controversy requirement has

13 been satisfied.

14     **1.    Standard of Review**

15     The right to remove a case to federal court is entirely a creature of statute.  *See*

16 *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  The Ninth Circuit

17 "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal

18 jurisdiction must be rejected if there is any doubt as to the right of removal in the first

19 instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863

20 F.2d 662, 663 (9th Cir. 1988)).  "The 'strong presumption' against removal jurisdiction

21 means that the defendant always has the burden of establishing that removal is proper."  *Id.*

22 (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990);

23 *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

24     The removal statute, 28 U.S.C. § 1441, allows defendants to remove an action when

25 a case originally filed in state court presents a federal question, or is between citizens of

26 different states and involves an amount in controversy that exceeds $75,000. *See* 28 U.S.C.

27 §§ 1331, 1332(a),1441(a)-(b).  Only state court actions that could originally have been filed

28

14cv2496

in federal court can be removed.  28 U.S.C. § 1441(a); *Caterpillar*, *Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

In determining the amount in controversy, courts first consider whether the amount is facially apparent from the complaint.  *Abrego v. DowChem. Co.*, 443 F.3d 676, 690 (9th Cir. 2006); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). When the amount in controversy is not apparent on the face of the complaint, the removing party has the burden of proving that the amount in controversy exceeds $75,000, by a preponderance of the evidence.  *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) (holding that "in cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]").

## 2.    Amount in Controversy

The Complaint does not specify an amount in controversy but rather seeks declaratory relief, injunctive relief, and restitution in an unspecified amount.  (Compl. 8-9.)  "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977).  The value of the declaratory or injunctive relief does not need to be an exact valuation.  *Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1172 (C.D. Cal. 2008).  Ninth Circuit courts have applied the "either viewpoint" rule for the purposes of calculating the amount in controversy.  *See Sanchez*, 102 F.3d at 405. When the complaint seeks a judgment relating to a non-compete clause, to determine the value of enforcing the non-compete clause from the previous employer's point of view, courts will look to the profits earned on business generated by the employee during the period immediately preceding termination.  *Luna,* 575 F. Supp. 2d at 1172 (regarding an employment agreement that included both non-solicitation and non-competition clauses). From the employee's point of view, courts will look to employee's current salary from the

new employer, because if the restrictive covenant clause is enforced, the employee stands to lose his ability to earn that salary. *See Prutsman v. Rust Consulting, Inc.*, No. C12 6448 PJH, 2013 WL 1222707, at *1 (N.D. Cal. Mar. 25, 2013); *see also Rao v. Tyson Foods, Inc.*, No. 1:09 CV 303 AWI SMS, 2009 WL 1657458, at *1 (E.D. Cal. June 12, 2009).

Defendant in this case asserts Meyer was the primary Trauma Representative responsible for servicing customers that generated annual revenues in excess of $650,000. (Not. of Removal 5; Mem. Opp. Remand 9; Hurtado Removal Decl. ¶ 7, Doc. No. 2; Hurtado Remand Decl. ¶ 8, Doc. No. 19-1.)  Defendant also asserts that these customers generated profitability satisfying the jurisdictional amount in each of Meyer's last two years working for Defendant.  (Mem. Opp. Remand 9.)  It is reasonable to infer that $650,000 in revenue, more likely than not, generated more than $75,000 in profits.  *See Mahoney v. Depuy Orthopaedics, Inc.*, No. CIVF 07 1321 AWISMS, 2007 WL 3341389, at *2, 5 (E.D. Cal. Nov. 8, 2007) (finding it unlikely that profit would be equal or less than $75,000 in light of approximately $3.9 million in sales revenues between January 2006 and November 2006, and $2.4 million in sales revenues between December 2006 and August 2007, generated by plaintiff); *Hartstein v. Rembrandt IP Solutions, LLC*, No. 12 2270 SC, 2012 WL 3075084, at *3 (N.D. Cal. July 30, 2012) (finding it more likely than not that plaintiff was worth more than $75,000 to defendant based on a declaration that "the potential expected profit from many of [p]laintiff's investment leads, if acquired and developed, was in the millions of dollars," even though the profitability of the leads could not be accurately measured until a future date); *Info. Strategies, Inc. v. Dumosch*, 13 F. Supp. 3d 135, 142 (D.D.C. 2014) (finding plausible that defendant's work was worth more than $75,000 to plaintiff employer where revenue from business generated by defendant exceeded $1.5 million dollars, and revenue from billing for work defendant himself performed exceeded $265,000, even though the parties submitted no evidence showing the exact figure of profit accrued from revenues generated by defendant).  This Court acknowledges that $650,000 in revenue is less than some other cases on this issue in that it is not in the millions of

dollars.  However, inferring a $75,000 profit from $650,000 in revenue requires only a slim profit margin and is entirely reasonable.

Significant to this Court's analysis, Defendant has offered more than just conclusory allegations that the amount in controversy is more than $75,000.  Defendant also submitted testimony, by declaration, of Defendant's Human Resource Manager whose responsibilities include oversight of employee performance evaluation and accountability for area research and developmental projects. (Hurtado Remand Decl. ¶ 2.)   Defendant's Human Resource Manager declared that Operating Income is a measure of profitability, and Operating Income from the customers for which Meyer was primarily responsible was more than $100,000 in 2014 and $190,000 in 2013. (*Id.* at ¶ 9); *compare with Benefits Technologies, LLC v. Stanley*, No. 10 CV 0561 CVE FHM, 2010 WL 4736297, at *4 (N.D. Okla. Nov. 16, 2010) (finding amount in controversy not established because defendants did not provide an economic analysis of the amount in controversy and only a conclusory allegation where defendants simply stated that enforcement of the non-compete would result in damages "far in excess of $100,000"); *Sarfraz v. Vohra Health Servs., PA*, 663 F. Supp. 2d 147, 150-51 (E.D.N.Y. 2009) (indicating that it was not clear whether plaintiffs had satisfied jurisdictional threshold where plaintiffs alleged that they were entitled to a salary of $150,000 and a bonus of 42% of collections, but failed to give any additional details related to compensation or the period for which they were claiming payment). The Court also finds it substantial that Meyer was the *primary* representative responsible for these customers. *See Hartstein*, 2012 WL 3075084, at *3 (noting that the former employee was one of two employees with direct responsibility for generating defendant's investment leads).  In light of the above, Defendant has proven, by a preponderance of the evidence, that the amount in controversy from Defendant's point of view exceeds $75,000.

Defendant also argues that the amount in controversy is met from Plaintiffs' point of view, as measured by Meyer's current salary at Smith.  (Not. of Removal 5.)  As support, Defendant asserts Meyer's salary exceeded $75,000 during his employment with Defendant.

(*Id.*)  Defendant urges that based on Meyer's former salary, his current salary at Smith more likely than not exceeds $75,000.  (*Id.*)

While former salary is relevant to determining current salary, it is not enough to establish that the amount in controversy requirement is satisfied, by a preponderance of the evidence.  *See Prutsman*, 2013 WL 1222707, at *1 (declining to speculate current salary based solely on former salary).  Thus, although the Court notes Meyer's former salary, Plaintiffs raise, and this Court agrees, the amount in controversy is not met through Meyer's previous salary alone.  (Reply Supp. Remand 4.)  However, Defendant did not rely solely on Meyer's former salary to establish the amount in controversy, but rather provided evidence as to the amount in controversy from the Defendant's viewpoint as well, that is, profits attributable to the Meyer. (Mem. Opp. Remand 9.)  As previously noted, Defendant has shown, by a preponderance of the evidence, that Meyer's servicing resulted in more than $75,000 in profits for Defendant.   Therefore, the Court relies on profits to conclude that Defendant has satisfied the amount in controversy requirement for diversity jurisdiction.

The final ground Defendant offered for removal was that the object of the litigation can be measured by the value of Defendant's trade secrets and confidential information. (Not. of Removal 5); *Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1071 n.1 (9th Cir. 2000) (discussing amount in controversy in the context of a party protecting its confidential information from disclosure); *Davis v. Advanced Care Tech., Inc.*, 2007 WL 1302736, at *2 (E.D. Cal. May 2, 2007) ("Where the object of the litigation is a noncompetition agreement designed to protect a company's confidential information, the value to the company of protecting that information is the amount in controversy.").  As support, Defendant highlighted the Employment Agreement itself, as well as a declaration regarding the confidential information.  (*See* Not. of Removal 6; Hurtado Removal Decl.)  Defendant testified by declaration that Trauma Representatives, such as Meyer, are given access to a wide variety of trade secrets, confidential, and proprietary information. (Hurtado Removal Decl. ¶¶ 8-10 (discussing the types of information that Meyer would have had access to and

that Defendant has spent millions of dollars and years developing this information).) Plaintiffs did not address this argument in their opening brief for remand.[3] Defendant's memorandum in opposition of remand reiterated the trade secret and confidential information argument and asserted that Plaintiffs conceded the issue by failing to address it.  (Mem. Opp. Remand 4); *see Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.")  Plaintiffs then addressed the issue in their reply, arguing that Defendant failed to demonstrate that its trade secret and confidential information are implicated or that the value of those exceed $75,000.  (Reply Supp. Remand 2.)   As the Court has already discussed in this order, the amount in controversy is satisfied on other grounds. Even if the Court were to reach this argument, Meyer was employed by Defendant, who provides and sells medical products to hospitals and doctors (Compl. 4), Meyer was employed in this position for nearly two years (*id.*), the Employment Agreement contemplates the protection of trade secrets (*see, e.g.*, *id.*, Employment Agreement 6 ("[F]or a period of one year following the Employment Termination Date, in order to protect the confidential information and trade secrets of [Defendant] . . . .")), and Meyer now works for a company that is a competitor of Defendant (Compl. 5; Not. of Removal 7).   Defendant's Notice of Removal supported their trade secrets argument by citing to the Employment Agreement and a declaration, which carefully detailed the type of information protected. (*See* Not. of Removal 6-7 (discussing support for Defendant's position and citing various provisions in the Employment Agreement and the supporting declaration).)  In light of all of this, even considering the arguments in Plaintiffs' remand reply memorandum, the Court's conclusion would stay the same.

Having fully discussed the arguments regarding amount in controversy, and being satisfied that the amount in controversy in this case does exceed $75,000, the Court now turns to Plaintiffs' argument that even if the amount in controversy is met, the Court should

---

[3] Plaintiffs acknowledged that Defendant relied on trade secrets to remove and asserted generally that Defendant had failed to support its jurisdictional burden, but did not expound on the trade secret aspect of the argument. (Mem. Supp. Remand 5.)

14cv2496

abstain from hearing this case because it involves issues affecting California state policy interests. (Mem. Supp. Remand 9-10.) As support for their abstention arguments, Plaintiffs analyze one case: *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). (*Id.*) In *Quackenbush*, the Supreme Court affirmed the United States District Court for Central District of California's abstention because of California's interest in regulating insurance insolvencies and liquidations. (*Id.*) Plaintiffs then urge the Court that California has an "equally (if not stronger) interest in the enforceability of non-compete covenants." (Mem. Supp. Remand 10.) However, Plaintiffs fail to cite any authority as to the strength of California's policy against non-compete clauses, nor any case law where a federal court in California has abstained from hearing a case involving non-compete covenants. The authority presented by Plaintiffs fails to persuade the Court that abstention is warranted here. Accordingly, the Court declines to abstain as federal courts have an interest in determining the cases before them.

After considering both parties' arguments in their briefing, this Court **DENIES** Plaintiffs' motion to remand.

### B.   Motion to Dismiss

Defendant moves to dismiss this case or in the alternative transfer it under 28 U.S.C. § 1404(a), urging this Court to enforce the forum selection clause in the Employment Agreement. (Mem. Supp. Dismiss 4.) Defendant also moves to dismiss Plaintiffs' Business and Professions Code section 17200 claim under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiffs have failed to state a claim. (*Id.* at 17-18.)

### 1.   28 U.S.C § 1404(a) Forum Selection

Defendant moves to dismiss this case or in the alternative transfer it under 28 U.S.C. § 1404(a) and pursuant to the forum selection clause in the Employment Agreement, which reads:

> Jurisdiction.  Stryker Orthopaedics and Employee consent and agree that any and all litigation between them relating to this

14cv2496

> Agreement shall take place in the State of New Jersey, and each of them expressly consents to the jurisdiction of the federal and/or state courts in New Jersey (the "Court").

(Employment Agreement at 11.)

The Employment Agreement also includes a choice of law clause, which states, in its entirety:

> Governing Law.  This Agreement shall be construed in accordance with and governed for all purposes by the laws of the State of New Jersey, without regard to its conflicts of laws principles.

(*Id.*)

Defendant argues that the mandatory forum selection clause requires dismissal or transfer under 28 U.S.C. § 1404(a). (Mem. Supp. Dismiss 4.) Defendant acknowledges that there are reasons which would render a forum selection clause unenforceable, but urge that there are no extraordinary factors in this case that support invalidating the New Jersey forum selection clause. (*Id.* at 6.) Defendant also argues that public interest factors do not disfavor transfer. (*Id.* at 16.)  Plaintiffs argue that enforcement of the forum selection clause will result in California public policy being contravened, inclusion of the forum selection clause was a result of undue influence and overreaching, and will effectively deprive Meyer of his day in court. (Mem. Opp. Dismiss 1-2.)

### a.    Standard of Review

Federal courts apply federal law to determine the enforceability of a forum selection clause. *Doe 1 v. AOL LCC*, 552 F.3d 1077, 1083 (9th Cir. 2009).  Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  *M/S Bremen v. Zapta Off-Shore Co.*, 407 U.S. 1, 10 (1971).  Once a forum selection clause is determined to be enforceable, the appropriate way to enforce a forum selection clause is through 28 U.S.C. § 1404(a) or the

14cv2496

doctrine of *forum non conveniens*.[4]  *Atlantic Marine Const. Co., Inc.*, 134 S.Ct. at 580.  Both 28 U.S.C. § 1404(a) and the *forum non conveniens* doctrine entail the same balancing-of-interests standard.  *Id*.

### b.   Enforceability of the Forum Selection Clause

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10.  "[T]he forum selection should control absent a *strong* showing that it should be set aside."  *Id.* at 15 (emphasis added).  The Supreme Court in *Bremen* recognized three reasons that would make enforcement of a forum selection clause unreasonable: (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought.  *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (citing and quoting *Bremen*, 407 U.S. at 12-13, 15, 18 (quotations omitted)); *see Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 867-68 (9th Cir. 1991) (noting that the *Bremen* framework applies to forum selection clauses in employment contracts, taking into account "the factual circumstances of the initial employment agreement and the underlying dispute . . . including any power differentials").

### i.   Fraud or Overreaching

Plaintiffs argue that inclusion of the forum selection clause was a result of undue influence and overreaching.  (Mem. Opp. Dismiss 1, 13-14.)  Plaintiffs allege  Meyer was presented with a "heap of documents" which he had to sign immediately, the forum selection clause was on page 11 of 12 of the Employment Agreement, Meyer was not told he could

---

[4] "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system."  The residual doctrine of *forum non conveniens* applies in cases calling for a non-federal transferee forum.  *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court*, 134 S.Ct. 568, 580 (2013).

14cv2496

or should consult an attorney or that he was free to ask questions about the terms of the Employment Agreement, the Employment Agreement referenced California in the title, and no one explained to Meyer that the forum selection and choice of law clause meant that litigation would occur in New Jersey pursuant to New Jersey law. (*Id.*) Defendant points out that Plaintiffs have failed to allege when Meyer asked for and was denied the opportunity to seek counsel and/or an explanation of the agreement terms. (Reply Supp. Dismiss 8.)

Plaintiffs note, and this Court acknowledges, that in the context of employment agreements, circumstances such as power differentials, educational background or business expertise of the challenging party, and evidence of inconvenience or financial ability must be taken into account in the *Bremen* analysis. (Mem. Opp. Dismiss 6); *see Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141-42 (9th Cir. 2003) (citing *Spradlin*, 926 F.2d at 867-69). Taking into account these circumstances, this Court is compelled to also consider that Meyer is a working professional and this was a typical business contractual relationship. (Compl. 4); *see Spradlin*, 926 F.2d at 868-69 (noting that a militating fact would be evidence that the plaintiff was uneducated or relied heavily on a trusted representative of the employer); *see also Murphy*, 362 F.3d at 1141 (rejecting the claim of fraud or overreaching when the plaintiff alleged he only completed formal education through the tenth grade and he was told to sign the contract as it was written by the employer if he wanted to work).

After reviewing the case law, circumstances where a court does find fraud, undue influence, or overreaching are much more factually persuasive. One example is *Peversen v. Boeing Co.*, 715 F.3d 276 (9th Cir. 2013). In *Peversen*, the court found that there were sufficient facts to demonstrate that the forum selection clause was included in the employment contract by fraud or overreaching. *Id*. at 282-83. The facts that the court relied on were submitted by sworn affidavit, which stated that the initial employment contract plaintiff signed in the United States did not mention a Saudi forum selection. *Id.* at 282.

However, upon arrival in Saudi Arabia, plaintiff was required to sign a new employment contract, which did contain a Saudi forum selection clause. *Id.* at 282-83. Further, the supervisor did not permit plaintiff time to read the contract and told plaintiff that if he did not sign it he would be forced to return to the United States immediately at his own expense. *Id.* at 283.

The facts alleged by Plaintiffs are unsubstantial and do not amount to undue influence or overreaching. Except the fact that the Employment Agreement was 12 pages, Plaintiffs give no further factual support as to the nature of the "heap of documents" to persuade this Court that it amounted to fraud, overreaching, or undue influence. (*See* Mem. Opp. Dismiss 13.) Plaintiffs argue that the forum selection clause and choice of law clause being "hidden on page 11 of a 12-page, single-spaced contract" supports a finding of undue influence and overreaching, however, this Court finds it reasonable to read 12 pages of an Employment Agreement. (*See id.* at 14-15.) Further, upon review of the Employment Agreement, this Court finds nothing unusual that would indicate undue influence or overreaching. Importantly, Plaintiffs cite to no case law or authority to support the finding of undue influence or overreaching based on these facts.

Even assuming the truth of Plaintiffs' assertions and allegations, the Court concludes that Plaintiffs have failed to provide sufficient facts to show that the forum selection clause was a product of fraud, overreaching, or undue influence.

### ii.   Deprived of Day in Court

Regarding the second reason for invalidating a forum selection clause, Plaintiffs argue that enforcing the forum selection clause would effectively deprive Meyer of his day in court. (*Id.* at 15-16.) Plaintiffs allege litigating this case in New Jersey would be "akin to financial suicide for Meyer" because his job requires him to be available in San Diego. (*Id.* at 16.) By declaration, Meyer asserts that if he does not meet a surgeon's needs, he is at risk of losing the account, and therefore is at risk of being unable to support his family. (Meyer Decl. ¶¶ 10-13, Doc. No. 17-1.)

As support for their argument, Plaintiffs rely on *Murphy v. Schneider National, Inc*. (*See* Mem. Opp. Dismiss 15-16.)  In *Murphy*, the plaintiff, who had a disability, submitted an affidavit stating he has been unable to work, received disability payments of $2,234 per month between him and his wife, who also had a disability, incurred $200-$300 per month in credit card bills, had no disposable income, and therefore could not afford to maintain the case in the forum state.  *Id.* at 1137.  The plaintiff asserted that while driving may be an affordable way to travel, his injury prevented him from sitting for more than one hour, he could not drive while taking pain medication, and his wife could not drive because of her injuries.  *Id.* at 1142.  The court ruled that the plaintiff's physical and financial limitations together would bar him from litigating in the forum state and therefore preclude his day in court. *Id*. at 1143.

*Murphy* is clearly distinguishable from the present matter.  Plaintiffs argue that traveling to New Jersey will put Meyer *at risk* of financial instability, unlike the plaintiff in *Murphy* who did not have the financial ability to travel and whose physical limitations greatly limited his mobility.  Further, to even reach the conclusion that litigating in New Jersey will cause Meyer "financial suicide" requires several assumptions that this Court is not inclined to make.  There is nothing barring Meyer from litigating in New Jersey and therefore nothing depriving him from his day in court were this Court to enforce the forum selection clause.  As such, this argument fails.

### iii.    Contravene Public Policy

Regarding the third factor for invalidating a forum selection clause, Plaintiffs argue that enforcing the forum selection clause will contravene California public policy against non-compete clauses. (Mem. Opp. Dismiss 1.)  In order to reach this conclusion, Plaintiffs urge this Court to consider the forum selection and choice of law provisions together, which would result in a New Jersey court applying New Jersey law, and ultimately disregarding California public policy.  (*Id*. at 7-12.)

14cv2496

Plaintiffs' argument is similar to that in *Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101 (S.D. Cal. 2006).  In *Swenson*, the plaintiff argued that the forum selection clause would contravene section 16600, and labeled the forum selection clause as defendant's "attempt to escape California law and public policy barring [defendant's] illegal employment prohibition." *Id.* at 1104.  The court ruled that plaintiff could not combine the forum selection and choice of law analyses to argue that enforcement of the forum selection clause would result in the application of another state's law that is violative of California public policy. *Id.*  While the forum state court's application of the forum state laws may lead to a result that is in conflict with the provisions of section 16600, the court found that does not mandate finding the forum selection clause invalid. *Id*; *see also Loughlin v. Ventraq, Inc.*, 10-CV-2624-IEG BGS, 2011 WL 1303641, at *7 (S.D. Cal. Apr. 5, 2011) (enforcing forum selection clause even assuming the application of the forum state law may lead to a result contrary to California policy)*; see also Manchester v. Arista Records, Inc.*, No. CV 81-2134-RJK, 1981 U.S. Dist. LEXIS 18642, at *14-15 (C.D. Cal. Sept. 16, 1981) (holding that a choice of forum clause should be enforced *even though* the forum would apply a rule of law that is contrary to strong California public policy); *Mahoney*, 2007 WL 3341389, at *8 (refusing to speculate as to how the forum state court may rule on the non-compete clause). Thus, the *Swenson* court found the forum selection clause valid  on the basis that the forum selection clause *itself* did not contravene California public policy.  *Swenson*, 415 F. Supp. 2d at 1104-05.

This Court agrees.  Indeed, the proper inquiry is the reasonableness of the forum selection clause itself, not the reasonableness of the effect of enforcing it.  *See Hartstein*, 2012 WL 3075084, at *5  (noting that "[t]he problem with [p]laintiff's argument is that it does not challenge the reasonableness of the forum selection clause itself, only the reasonableness of its effect"); *Loughlin*, 2011 WL 1303641, at *7 (concluding that plaintiff's argument conflated forum selection clause and choice of law inquiries and noting that even if the application New Jersey law contravenes California public policy, plaintiff

14cv2496

1    made no showing that enforcing the venue provision presents any potential for such
2    conflict).

3        There are circumstances where the forum selection clause itself contravenes a public
4    policy.  One example is *Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000).  In
5    *Jones*, the court dealt with a forum selection clause in a franchise agreement.  *Id.* at 496.
6    The court concluded that California Business and Professions Code section 2004.5
7    established a strong California public policy "to protect California franchisees from the
8    expense, inconvenience, and possible prejudice of litigating in a non-California venue." *Id.*
9    at 498.  *See* California Business and Professions Code § 2004.5 ("A provision in a franchise
10   agreement restricting venue to a forum outside this state is void with respect to any claim
11   arising under or relating to a franchise agreement involving a franchise business operating
12   within this state.").  The Ninth Circuit court affirmed the district court's order denying
13   defendant's motion to dismiss or transfer the action pursuant to the forum selection clause
14   because the provision itself contravened California public policy against litigating
15   California franchise related claims outside California.  *Id.  Jones* is clearly distinct from the
16   instant matter for a number of reasons and the Court has not been presented with any
17   authority that convinces the Court to rule otherwise.

18       In sum, the Court does not find that the forum selection clause in the Employment
19   Agreement itself contravenes California public policy.  For the foregoing reasons, the Court
20   finds Plaintiffs have failed to carry their burden of demonstrating that the forum selection
21   clause is unreasonable under *Bremen*.  Thus, the forum selection clause is enforceable.

22
23          c.    **Adjusted 28 U.S.C. § 1404(a) or *Forum Non Conveniens***
24                **Analysis**

25       The Court now addresses the 28 U.S.C. § 1404(a) question.  The appropriate way to
26   enforce a forum selection clause is through the doctrine of *forum non conveniens*.  *Atlantic*
27   *Marine*, 134 S.Ct. at 580.  "In a typical case not involving a forum-selection clause, a district
28   court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate

14cv2496

both the convenience of the parties and various public-interest considerations." *Id.* at 581. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the proper forum." *Id.* (internal quotations omitted).

When there is a valid forum selection clause, a court's usual 28 U.S.C. § 1404(a) or *forum non conveniens* analysis is adjusted in three ways: (1) courts may accord no weight to the plaintiff's chosen forum;[5] (2) a court should not consider arguments about the parties' private interests;[6] and (3) if venue is transferred, the original venue's choice of law rules will not apply—a factor that may affect public-interest factors. *Id.* at 581-82. According to these adjustments, a district court may consider only public-interest factors. *Id.* at 582. The public-interest factors which may still be considered include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 582 n.6. These public-interest factors will rarely defeat a transfer motion and the forum selection clause should control except in unusual cases. *Id.* at 582. As the party acting in violation of the forum selection clause, plaintiffs "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 583.

Although Plaintiffs raised California public policy, Plaintiffs did not directly address the 28 U.S.C. § 1404(a) or *forum non conveniens* analysis. Instead, Plaintiffs memorandum focuses on the *Bremen* factors. In arguing public policy, Defendant asserts that the "local interest factor favors having the controversy in New Jersey because [D]efendant['s] . . .

---

[5] Rather, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Atlantic Marine*, 134 S.Ct. at 582.

[6] "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preseleted forum." *Id.*

14cv2496

headquarters are in New Jersey and, thus, the harm . . . that [Defendant] would suffer[] if Plaintiffs were to violate and/or interfere with the Agreement would significantly affect [Defendant's] business in New Jersey." (Mem. Supp. Dismiss 16-17.)  Additionally, the Employment Agreement provides that New Jersey law shall govern (*See* Employment Agreement 11), which goes to the public-interest factor of having a case in a forum that is at home with the law, also favoring transfer to New Jersey.  (Mem. Supp. Dismiss 17.)

Plaintiffs challenge the enforceability of the forum selection clause, but do not contemplate the Court reaching the 28 U.S.C. § 1404(a) or *forum non conveniens* analysis. Because Plaintiffs have failed to raise any public-interest factors, Plaintiffs have not met their burden of showing, and this Court does not find that public-interest factors overwhelmingly disfavor a transfer.  Therefore, Plaintiffs have not met their burden of showing why this Court should not transfer the case to New Jersey.  *See Atlantic Marine*, 134 S.Ct. at 581 ("[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.").

As a final matter, Defendant argues, and Plaintiffs do not dispute, the forum selection clause is binding on Smith as a closely related party.  (Mem. Supp. Dismiss 13-14); *see Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 n.5 (9th Cir. 1988) (rejecting the argument that the forum selection clause applies only to the defendant who signed the contract because the conduct of the non-parties were closely related to the contractual relationship, noting that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses") (citations omitted).  The Court agrees.  Plaintiffs anticipate that Defendant will seek to enforce the provisions of the Employment Agreement and deprive Smith of its right to have Meyer perform services on Smith's behalf.  (Mem. Supp. Remand 3-4.)  Because resolution of Smith's issue requires determining the enforceability of a clause in the Employment Agreement, this Court finds

14cv2496

that Smith is sufficiently closely related to the contract to bind Smith to the forum selection clause.

After careful consideration of the parties' arguments, this Court finds that the forum selection clause is enforceable, and Plaintiffs have not met their burden of showing why the court should not transfer the case to the forum to which the parties agreed. Accordingly, this Court **GRANTS** Defendant's motion to transfer[7] the action to the United States District Court for the District of New Jersey under 28 U.S.C. § 1404(a) and pursuant to the valid forum selection clause.

### 2. Rule 12(b)(6) Failure to State a Claim

Defendant moves to dismiss Plaintiffs' third cause of action, the Business and Professions Code section 17200 claim (*see* Compl. 8-9), under Federal Rule of Civil Procedure 12(b)(6). (Mem. Supp. Dismiss 17-18.) Defendant argues that Plaintiffs do not allege an injury in fact, but instead anticipate that Defendant will seek to enforce the restrictive covenant terms of the Employment Agreement. (*Id.* at 17.) The Complaint alleges Plaintiffs have been harmed and have lost money and property as a result of Defendant's conduct. (*See* Compl. at 8.)

Because this case will be transferred to New Jersey, this Court now defers Defendant's Rule 12(b)(6) motion to dismiss Plaintiffs' section 17200 claim, to the transferee court. *See Sinclair v. Wholesome & Hearty Foods*, 1995 WL 732855, at *4 n.1 (N.D. Cal. Nov. 29, 1995) (deferring motion to dismiss for failure to state a claim to the transferee court after transferring venue under 28 U.S.C. § 1404(a) and pursuant to a forum selection clause); *Thomas v. Asterion, Inc.*, No. CV10 01973 JF (HRL), 2010 WL 3037149, at *3 (N.D. Cal. July 30, 2010) (deferring determination of defendant's remaining motions,

---

[7] Defendant requests dismissal or, in the alternative, transfer. The Court declines to dismiss under 28 U.S.C. § 1404(a). "Section 1404(a) is merely a codification of the doctrine *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Atlantic Marine*, 134 S.Ct. at 580.

14cv2496

including a Rule 12(b)(6) motion to dismiss for failure to state a claim, to the transfer court after transferring venue sua sponte under 28 U.S.C. § 1404(a)).

## III.    CONCLUSION

Having carefully considered the parties' motions, the Court hereby **DENIES** Plaintiffs' motion to remand (Doc. No. 14), **GRANTS** Defendant's motion to transfer the action pursuant to 28 U.S.C. § 1404(a) (Doc. No. 5), and **DEFERS** Defendant's motion to dismiss Plaintiffs' third cause of action under California Business & Professions Code Section 17200 (Doc. No. 5).  This case is **TRANSFERRED** to the United States District Court for the District of New Jersey.

**IT IS SO ORDERED.**

DATED:  February 19, 2015

_____
Hon. Anthony J. Battaglia
U.S. District Judge

22

14cv2496